**In re Edward G. VOREK and Iris M. Vorek, Debtors.**

**James MILAM, Plaintiff,**

**v.**

**Edward G. VOREK, Defendant.**

**Bankruptcy No. 87–01372–TH.**
**Adv. No. 87–0201.**

United States Bankruptcy Court,
S.D. Indiana,
Terre Haute Division.

Jan. 13, 1989.

Gregory S. Carter, Terre Haute, Ind., for plaintiff, James Milam.

Jeff M. Thomas, Clinton, Ind., for defendant, Edward Vorek.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

MICHAEL H. KEARNS, Bankruptcy Judge.

This adversary was filed on November 30, 1987, in which creditor/plaintiff seeks relief for an order declaring that a state court judgment obtained by the plaintiff against the defendant/debtor on November 6, 1987 in the sum of Four Hundred Seventy-five Thousand Dollars ($475,000.00) in the Vermillion Circuit Court, State of Indiana, pursuant to a jury verdict, be declared to be nondischargeable. Defendant/debtor filed his Answer thereto on December 23, 1987. A pre-trial conference was held on February 16, 1988. At pre-trial the parties jointly moved and were granted opportunity to file briefs in support of their respective legal positions and further to give oral arguments in support thereof.

Briefs were filed and oral arguments were given on May 31, 1988. Thereafter on July 13, 1988 creditor/plaintiff moved for leave to amend Complaint to which debtor/defendant objected and replied on July 28, 1988.

The Court on July 29, 1988 granted plaintiff's Motion to Amend Complaint allowing the addition to the Complaint of an allegation of non-dischargeability under 11 U.S.C. A. § 523(a)(6). An Answer thereto was filed by defendant on August 9, 1988, and the issues were then joined.

On August 9, 1988, the Complaint for Nondischargeability was set for trial on September 9, 1988 at the Terre Haute Division.

At the trial before this Court, Gregory S. Carter appeared on behalf of creditor/plaintiff, and Jeff M. Thomas appeared on behalf of the debtor/defendant. The party litigants did not personally appear before the Court.

By agreements of the parties and pursuant to stipulation of counsel, formal presentation of evidence was waived and counsel submitted the matter to the Court for ruling as a matter of law. Counsel further agreed that the Court be furnished and consider the following in making its decision, to-wit:

1. A certified partial transcript of a jury trial in the Vermillion Circuit Court, County of Vermillion, State of Indiana; said trial designated as *James Milam, plaintiff, v. Edward Vorek and City of Clinton, defendants*, Cause Number 8509 CIV–0084. (The partial transcript was unnumbered, and this Court numbered the same from pages 1 to 186, inclusive).

2. Defendant's Exhibits No. 2 through 9, the same being polaroid photographs of defendant's truck (# 2 and # 3), plaintiff's wheelchair (# 4, 5, & 6), and the street intersection at which the act complained of occurred (# 7, 8, and 9).

3. Deposition of defendant, Edward Vorek, taken on behalf of plaintiff on the 22nd day of January, 1987.

4. Deposition of John R. Mayer, M.D. taken on behalf of the defendant on August 31, 1987.

5. Plaintiff's deposition, Exhibit # 1, the same being a letter under date of March 19, 1987 from John R. Mayer, M.D. to Gregory S. Carter, attorney.

6. Deposition of Alan Michael Sadove, M.D. taken on behalf of the plaintiff on September 14, 1987.

The Court has carefully considered the arguments of counsel and has read and examined their briefs and other legal memoranda; this Court has further perused the documentary evidence submitted and carefully and fully considered the same.

Having accomplished the foregoing, the Court does now make the following Findings of Fact, Conclusions of Law and Order. The Findings of Fact may be considered as Conclusions of law, and the Conclusions of Law may be construed as Findings of Fact, if necessary to the proper construction of the Order.

## FINDINGS OF FACT

1. On July 7, 1984, at approximately 7:00 p.m. E.S.T. the defendant was operating a motor vehicle, to-wit: a 1980 Ford Bronco four-wheel drive, V-8 engine, equipped with "big" tires for rough terrain driving. (p. 33, 1. 154, Vorek's deposition). He was the lone occupant in the vehicle. At this time he approached the intersection of Main and Mulberry Streets in the City of Clinton, County of Vermillion, State of Indiana heading west. At this intersection the defendant's truck in proceeding through the intersection struck the plaintiff.

2. The plaintiff, an adult male, was at this time a paraplegic, paralyzed from the waist down, as a result of a gun shot wound suffered in 1979 and was confined to a wheelchair. The plaintiff was proceeding through the same intersection described in rhetorical paragraph one (1), and was knocked to the pavement in the crosswalk out of the wheelchair, which itself was overturned.

3. The defendant, a married adult male, completed a tenth (10th) grade education and is employed as a supply truck driver with an area coal company. He resides in Clinton, Indiana with his wife and her twenty (20) year old son. By his own admission, he has had one (1) arrest which he "thought" the charge was reckless driving in a (1) one car accident several years prior. (p. 11, 1. 41, Vorek's deposition). He had, in addition to his employment served in the Auxiliary Clinton Police Department from 1977 and was its director for two and one-half (2½) years until his resignation in 1982.

4. On the day of the act complained of, the defendant testified that he had dinner at approximately 11:30 a.m. or 12:00 noon during which time he consumed two (2) beers. Thereafter, at about 1:00 p.m., he went boating with a male friend and the latter's two (2) young sons. He stated, and it was not disputed, that he consumed no other alcoholic beverages, that he took no drugs other than one (1) medication, that being tagamet, a prescription drug for a stomach or digestive disorder which he had taken for some length of time.

5. Defendant testified further that immediately before the occurrence, he had dropped his daughter-in-law and her friend off at the skating rink and was intending to return home. He testified that it was a clear evening, no precipitation, and as he approached the intersection of Mulberry and Main Streets, the light was red for his direction (west), and he came to a complete stop. He did state the traffic light hung in the center from wires and the sun was "just kind of deep down in my eyes, you know, right behind the stop light." (p. 14–15, 1. 66, Vorek's deposition). He further stated he was wearing sun glasses.

6. Defendant testified that he had his windows shut and the air conditioner on at the time of the occurrence.

7. The vehicle defendant was driving has heretofore been described, but as it was the subject of inquiry at trial and in deposition, it is found that the vehicle was not wider or, if any, only slightly, than a normal pickup truck, it had big tires, and the defendant sat about five (5) feet from ground level in said vehicle (p. 33, 1. 149, Vorek's deposition).

8. When the traffic light had changed from red to green, the defendant removed his foot from the brake, and the truck "started easing forward" through the intersection. (p. 16 & 17, 1. 75, Vorek's deposition).

9. Defendant further testified there was no vehicle behind him at such time.

10. The plaintiff, paralyzed from the waist down and in a wheelchair, was proceeding in the cross-walk at the intersection when the defendant's truck proceeded forward and struck the plaintiff.

11. Testimony concerning the particular facts surrounding the occurrences are contradictory as defendant testified that before he entered the intersection after the light changed, he looked left and right and saw no one. But witness Steve Poltrock, who then was working at the Clinton arcade in the block immediately north of the intersection on Main Street, testified he

helped plaintiff over the curb and said the light was green at the cross-walk and that plaintiff was in the cross-walk ten (10) or eleven (11) feet when the truck struck him. Plaintiff's testimony was consistent with witness Poltrock's. Poltrock acknowledged that he had known plaintiff for four or five years prior to this occurrence. Defendant was unwavering in his testimony that he never saw plaintiff prior to entering the intersection, and that the first awareness of striking the plaintiff was when he saw the plaintiff's hands fly up in front of the truck's front.

12. Plaintiff, defendant and witness Poltrock all agree that defendant then stopped his truck, got out and either rendered assistance to plaintiff or attempted and offered to do the same. All also agree that plaintiff stated that he was "fine," or "okay," or "thought so," and needed no assistance.

13. Defendant testified that plaintiff was assisted not by witness Poltrock but by a young blond haired girl as well as himself (defendant), and that plaintiff turned himself around and proceeded back north from where he came, having stated that he (plaintiff) was fine, that he would not cause defendant any trouble, and that he was just glad he was not killed. Based upon this, defendant decided there existed no reason to remain at the scene and got into his truck and drove home. He testified that plaintiff's hand had bled, but plaintiff insisted he was "okay" and that the wheelchair showed no damage.

14. Witness Poltrock and plaintiff both testified that defendant "smelled of alcohol." Neither testified as to any other significant act or omission, either as to defendant's operation of his motor vehicle or his conduct at the scene, except that defendant left the scene after they got on the curb.

15. Plaintiff called his mother to testify, and she stated she called defendant that evening regarding the occurrence and that defendant's speech was "sort of slurred." (p. 106, l. 20, partial transcript of Vermillion Circuit Court).

16. Defendant testified that plaintiff's mother did call him at home and said, "you just hit my boy" and that "he appears to be okay, but just to be on the safe side I'd like to take him down and have him checked at the emergency room," to which defendant replied "okay," and gave her the name of his insurance company and asked to be kept informed of plaintiff's condition. Defendant further testified that later on the next day the plaintiff's mother called again stating she had taken defendant to the emergency room and the doctor said "he was fine, nothing was wrong with him, although she stated she wanted to take him to another doctor" at a later date, to which defendant said, "fine." (p. 54, l. 17–22, partial transcript of Vermillion Circuit Court).

17. Defendant, a former reserve police officer, left the scene of the occurrence without causing the police to be summoned. In explanation of this fact, the defendant testified he left the scene because plaintiff said he was fine and wheeled himself away from the scene of the occurrence, "like nothing ever happened." (p. 24, l. 106, Vorek's deposition).

18. Defendant testified further that after the phone call or calls from the mother that evening, he either went to or called the police department and talked to an officer, and that he was instructed to come the next day to make a formal report. This defendant did with Officer Ed Lowery, desk sergeant. In further explanation of leaving the scene of the occurrence, defendant stated his examination of plaintiff's wheelchair lead to his conclusion that it looked "pretty good."

19. Plaintiff's paraplegia as a result of his gunshot wound to the neck suffered in 1979 consisted of the loss of the use of both legs and confined him to a wheelchair. After lengthy hospitalization, he was treated thereafter on a periodic basis for decubitius and other skin and ulcerated sores.

20. Extensive testimony was presented at trial by way of the introduction and admission of depositions and testimony by the witnesses as to medical evidence, describing plaintiff's original gunshot wound

in 1979, his physical condition thereafter up to and after the date of the occurrence complained of herein, as well as plaintiff's treatment during all of such times.

21. This Court is not a court of review and in the instant adversary is not required to consider or weigh the medical testimony regarding plaintiff's physical condition and injuries, their causation, if any, or the nature and extent of damages. This Court, however, is one of equity, and is not insensitive to this subject matter, and inasmuch as medical evidence, including depositions of doctors, were submitted to this Court, the same were read and examined.

As a result of the medical evidence submitted, this Court was made aware of the extremely serious nature of the plaintiff's condition, his pain and suffering, and the permanent disabling effect of these injuries, whether their cause was the gunshot wound or the occurrence with defendant, including his paraplegia, his decubitius ulcers, and the amputation of both legs. As serious as these injuries are, and as sensitive to them as this Court might be, their consideration, to repeat, is not and did not become a factor in the decision this Court rendered herein.

## CONCLUSIONS OF LAW

1. Pursuant to Title 11 U.S.C. § 523:

(a) A discharge under Section 727 ... does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

2. Pursuant to § 523(a)(6), plaintiff has the burden of proving by clear and convincing evidence each of these elements: (a) willfulness, (b) maliciousness, (c) injury, and (d) causation.

3. The courts have repeatedly been called on to interpret what proof is sufficient to support a case under § 523(a)(6). In *In re Zaidan*, 86 B.R. 296, 298 (Bktcy S.D.Fla.1988) the court held that:

Willful means "deliberate or intentional." *Auto Owners Insurance Co. v.*

*Hostetler (In the Matter of Hostetler)*, 44 B.R. 886 (Bankr.M.D.Fla.1984). To except a debt from discharge the creditor must show that there was a specific intent to injure the creditor. *Hostetler*, 44 B.R. at 886.

\* \* \* \* \* \*

Reckless disregard for others is not sufficient to except a debt from discharge under 11 U.S.C. § 523(a)(6). *Miller v. Held (In re Held)*, 734 F.2d 628 (11th Cir.1984); *Hostetler*, 44 B.R. at 888.

4. In the case of *In re Baker*, 86 B.R. 234, 238 (D.Colo.1988), the court provided that: "A showing of willfulness requires more than proof of inadvertence or negligence and may no longer be satisfied by merely proving 'reckless disregard'." Citing 3 Collier on Bktcy § 523.16 (15th ed.); *In re Louis*, 49 B.R. 135, 137 (Bktcy E.D. Wis.1985).

"'[W]illful' means deliberate and intentional and is not synonymous with the 'reckless disregard' standard." *Matter of Petsch*, 82 B.R. 605 (Bktcy M.D.Fla.1988).

5. In the case of *In re Burke*, 83 B.R. 716, 722 (Bktcy D.N.D.1988), the court noted that:

The recent Eighth Circuit decision of *In re Long*, 774 F.2d 875 (8th Cir.1985) has made it clear that the elements of willfulness and malice as used in section 523(a)(6) are two distinct characteristics which should not be lumped together but which should be analyzed separately. The element of willfulness simply means a deliberate or intentional action as opposed to one occurring by reason of negligence or accident. The presence of malice is more difficult to discern. As an element of proof in section 523(a)(6) actions, malice goes beyond mere willfulness and requires a higher degree of culpability. It must tend toward conduct which is targeted at the creditor at least in the sense that the conduct is certain or almost certain to cause the creditor harm.

6. Given the facts as set forth in the state court transcript, this Court can con-

clude that the defendant acted negligently, such as failing to maintain a proper lookout, in the operation of a motor vehicle or some other theory.

■ An argument of recklessness has been propounded in leaving the scene of an accident before the police arrived. This Court concludes that this argument is only rhetorical even, if true, since it was not the reckless act of "leaving" which was the cause of the injuries sustained by the plaintiff. Only the act of causing the truck to move forward into the defendant is relevant in analyzing the "willful and malicious" standard required under § 523(a)(6).

■ 7. While this Court may conclude that the defendant did willfully cause the truck to move forward and that this act was indeed the proximate cause of plaintiff's injury, the Court cannot conclude that the defendant caused the truck to move forward with the specific intent of causing injury to this plaintiff. *In re Wright*, 66 B.R. 403, 406 (Bktcy S.D.Ind.1986). No evidence of such intentional or malicious conduct in the operation of the truck with the specific intent of causing injury to the plaintiff was given.

8. For the foregoing reasons, the Complaint under § 523(a)(6) cannot be upheld by this Court.

9. The plaintiff has also alleged, however, that the debt should be declared nondischargeable for the reason "that such debt arises from a judgment ... entered in a court of record against the debtor wherein liability was incurred by such debtor as a result of the debtor's operation of a motor vehicle while *legally* intoxicated under the laws or regulations of any jurisdiction within the United States or its territories wherein such motor vehicle was operated and within which such liability was incurred;". [Emphasis Added].

10. Plaintiff must provide specific proof of intoxication. *Zaidan*, supra, 86 B.R. at 298.

11. The law as it existed at the time of the accident, provided:

*Indiana Code 9–11–2–1 Operation of vehicle with .10% or more alcohol in*

*blood.*—A person who operates a vehicle with ten-hundredths percent [.10%], or more, by weight of alcohol in his blood commits a class C misdemeanor.

Indiana Code 9–11–2–2. *Operation of vehicle while intoxicated.*—A person who operates a vehicle while intoxicated commits a class A misdemeanor.

9–11–1–7. *Prima facie evidence of intoxication.*—"Prima facie evidence of intoxication" includes evidence that at the time of an alleged violation there was ten-hundredths percent [.10%], or more, by weight of alcohol in the person's blood. [IC 9–11–1–7, as added by P.L. 143–1983, § 1.]

9–11–1–5. *Intoxicated.*—"Intoxicated" means under the influence of:

(1) Alcohol;

(2) A controlled substance;

(3) Any drug other than alcohol or a controlled substance; or

(4) Any combination of alcohol, controlled substances, or drugs; such that there is an impaired condition of thought and action and the loss of normal control of a person's faculties to such an extent as to endanger any person. [IC 9–11–1–5, as added by P.L. 143–1983, § 1.]

12. Judge Nicholas Sufana, now retired Judge of the U.S. Bankruptcy Court for the Southern District of Indiana, noted in order to establish driving a motor vehicle while legally intoxicated under Indiana law requires either proof of blood alcohol level or evidence that debtor "suffered from an 'impaired condition of thought and action and the loss of normal control of [his] faculties to such an extent as to endanger any person'." IC 9–11–1–5. *In re Wright*, supra, at 407.

13. It is clear from the facts that defendant left the scene of the accident, and therefore, no blood alcohol test or breath analyzer test was administered. There was no proof, therefore, that defendant had a blood alcohol level of .05%, .10% or more.

The defendant, an adult male, having prior service as an auxiliary police officer

in his community, erred in judgment by leaving the scene of the occurrence without summoning the police regardless of whether or not plaintiff had left and/or regardless of what plaintiff may have said regarding his lack of injury. This error in judgment, however does not present a scintilla of evidence relative to the issue of blood alcohol level, although it did prevent the administration of a breath analyzer or the accomplishment of other alcohol content testing or examination.

14. The only independent evidence alluding to any proof of "intoxication" on the part of the defendant was that defendant consumed two (2) beers approximately six (6) hours prior to the accident and that plaintiff's mother indicated that defendant's speech was slurred in a telephone conversation held later that day.

15. As Judge Sufana further stated: "[E]xceptions to discharge should be strictly construed against the objecting creditor in favor of the debtor ... A limited interpretation is also consistent with the congressional intent behind Section 523(a)(9)." *Wright,* supra, at 407.

16. Therefore, neither proof of reckless driving without strict proof of intoxication, nor proof of intoxication without specific connections to driving is sufficient to establish guilt of driving while intoxicated under Indiana law. As a result, this Court cannot hold a judgment based on either of these scenarios to be nondischargeable under § 523(a)(9).

17. This Court cannot help but conclude from having read the state court transcript and other legal memoranda, that while defendant may have been negligent or even reckless in his driving, and even while defendant may have consumed some alcohol prior to the accident, there simply is not sufficient evidence to show that defendant was "intoxicated" based either on his blood alcohol content or proof of impairment of his thoughts and actions.

18. This Court must, under the law, conclude that the judgment debt of plaintiff is dischargeable by the defendant/debtor in his Bankruptcy action.

ORDER

WHEREFORE, the Court does now ORDER, ADJUDGE and DECREE that the Complaint For Nondischargeability filed by plaintiff, James Milam, is hereby DENIED, and the judgment debt upon which this Complaint is based is dischargeable pursuant to § 523(a)(6) for insufficient proof that the defendant acted willfully and maliciously; and further, there is insufficient proof that the defendant, Edward G. Vorek, was legally intoxicated at the time of the accident.

SO ORDERED.